**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | **Criminal No. 07-CR-153(1) (TFH)** |
| *v.* | : | |
| | : | |
| **LONNELL GLOVER, ET. AL,** | : | |
| | : | |
| *Defendants.* | : | |

**DEFENDANT LONNELL GLOVER'S REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANTS' SEVERAL MOTIONS TO SUPPRESS THE RESULTS OF COURT
ORDERED ELETRONIC SURVEILLANCE**

      **DEFENDANT LONNELL GLOVER**, by and through undersigned counsel,
hereby submits his reply to the Government's Response to Defendants' Several Motions to
Suppress the Results of Court Ordered Electronic Surveillance (Docket Entry # 312), and states
as follows:

**STATEMENT OF FACTS**

      On June 16, 2008, Glover filed his Motion to Suppress Evidence Obtained from
Interception of Wire Communications and Seizure of Electronic Communications (Docket Entry
# 232).  The subject matter of his Motion is the February 9, 2007, Affidavit in Support of an
Application for an Order Authorizing the Interception of Wire Communications to and from
Mobile Cellular Telephone Number 202-276-4337 (Glover I).  In that Motion, Glover argues that
the affidavit was lacking in indicia of probable cause, contained reckless and misleading
statements and failed to demonstrate necessity for the interception of Glover's cellphone.  Glover
further argued that because the interception was unlawful, all fruits of the interception must be
suppressed.

      This Reply will focus on the "Necessity" issue regarding the affidavit.

**ARGUMENT**

As a general matter, Title III prohibits electronic surveillance by the government except under carefully defined circumstances.  The procedural steps provided in the Act require "strict adherence."  *United States v. Kalustian,* 529 F.2d 585, 588 (9th Cir.1976) (citing *United States v. Giordano,* 416 U.S. 505 (1974)), and "utmost scrutiny must be exercised to determine whether wiretap orders conform to Title III." *Id.* at 589.

The provision in issue is § 2518(1)(c). Known as the "necessity requirement," it mandates that each wiretap application include:

> (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

§ 2518(1)(c).  The necessity requirement "'exists in order to limit the use of wiretaps, which are highly intrusive.'"  *United States v. Bennett,* 219 F.3d 1117, 1121 (9th Cir. 2000) (quoting *United States v. Commito,* 918 F.2d 95, 98 (9th Cir. 1990)).  The statute requires that the issuing judge determine whether the wiretap application contains facts that support a finding that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(3)(c).  Taken together, §§ 2518(1)(c) and (3)(c) require a full and complete statement establishing necessity.  The purpose of these requirements is to ensure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime. *See United States v. Kahn,* 415 U.S. 143, 153 n. 12 (1974).  Thus, courts require a full and complete statement of specific allegations indicating why normal investigative procedures *failed or would fail in the particular case.  See United States v. Ippolito,* 774 F.2d 1482, 1486 (9th Cir. 1985) (emphasis added).

The government's opposition to Glover's Motion to Suppress misses the point

entirely and is replete with after-the-fact justifications for why the authorization was appropriate:

   a.    [Agent Pardee's] opinion benefits from 20/20 hindsight (Gov. Resp. at 30)
   b.    Just as Agent Pardee was blessed with the luxury of 20/20 hindsight in his
         interpretation of defendants' statements … (*Id.* at 32)
   c.    It seems to us that when a defendant claims that an affiant was reckless in certain
         conclusions, the record may be consulted to determine if that affiant was indeed
         reckless (*id.* at 32)

What the government does not grasp is that the Glover I Affidavit merely pioggybacks on the

Suggs Affidavit, is almost identical to it, and utterly fails to state with particularity to Glover

why traditional investigative techniques were not tried as to Glover, not Suggs.

        The facts in this case are hauntingly similar to those in *United States v. Blackmon*,

273 F.3d 1204 (9th Cir. 2001).  In *Blackmon*, the government obtained authorization for a wiretap

on Miller.  Prior to the Miller authorization, the government conducted an investigation

employing several traditional investigative techniques including informants, controlled

purchases, surveillance and pen registers.  *Id.* at 1206.  As a result of the Miller wiretap, the

government obtained authorization for a wiretap on Blackmon.  "The necessity section of the

FBI application for the Blackmon wiretap is, with a few alterations, a duplicate of the Miller

wiretap application.  Other that trap and trace devices and pen registers, no further investigative

techniques were attempted in between the application for the Miller wiretap and that for the

Blackmon wiretap."  *Id.*  "[I]t appears that the government conducted no investigation targeted

specifically at Blackmon.  The 'carbon copy' contains statements perhaps applicable to Miller,

but not to Blackmon.'"  *Id.* at 1208.

        The *Blackmon* court found that the affidavit contained at least two instances of

material misstatements and omissions.  First, that the surveillance conducted took place prior to

the Blackmon wiretap application.  The Court noted that the government's attempt to extrapolate

from "this single example that surveillance against Blackmon would be unsuccessful or

dangerous" was belied by the facts.  Second, that the government's assertion that informant's possessed only limited knowledge of the scope of the criminal enterprise was untrue because it omitted the extent to which informants could have been successfully used to gather information on Blackmon. *Id*. at 1209.   Having found material misstatements and omissions, the court then went on to determine whether "upon review of this application, purged of its misstatements, a reasonable issuing judge would find that the application" conformed to the requirements of §§ 2518(1)(c) and (3)(c).

Similarly, in this case, the government purported to conduct surveillance of Glover on at most two occasions, and even then can only claim to have actually surveilled Glover once.  (Affidavit at ¶ 32).  As in *Blackmon*, that surveillance occurred prior to the Glover application and there is no indication in the affidavit that the government conducted any further surveillance of Glover, his residences or his work.  More importantly, the affidavit's explanation for foregoing surveillance on Glover – that because the "subjects of the investigation appear to be extremely surveillance conscious" – is based solely on observations of Suggs, not Glover.

With respect to informants, the only information provided has to do with CW-1 and CW-2 and Suggs.  There is no indication that the government took any steps to develop or introduce such a source with respect to Glover, nor is there any concrete information about Glover's alleged organization beyond Pardee's generic assertions and speculation that such an attempt would not succeed if tried.  Pardee's assertions amount to generic information about how drug traffickers normally operate.

The *Blackmon* court concluded that the affidavit, purged of its misstatements , would not conform to the statute's requirements.  The court found that the affidavit did not meet the full and complete statement requirement of the statute because "it makes only general

allegations that would be true in most narcotics investigations.  Further, the affidavit contains

boilerplate conclusions that merely describe inherent limitations of normal investigative

procedures." *Id.* at 1210.

Specifically, regarding the need to meet the full and complete statement of

necessity requirement, the *Blackmon* court noted that the affidavit stated "a very generalized

investigative purpose:

> While [traditional] techniques are useful in establishing various aspects of the criminal enterprise, they have not been, and are not likely to be sufficient to produce the evidence necessary to identify *all the participants in this cocaine trafficking organization and to result in the successful prosecution of these individuals for their full involvement in this criminal enterprise.*

*Id.* at 1210.  In this case, the Affidavit states essentially the same:

> Normal investigative procedures that have been employed in this investigation to date have included: surveillance; debriefing of cooperating witnesses; consensual recording of telephone conversations; controlled purchases of narcotics; review of pen registers records for target telephone numbers and former telephones; and review of public records.  While this information has been probative in establishing probable cause that an ongoing illegal narcotics business is operating, it has not yet yielded sufficient evidence or ascertained the identities of, and proven beyond a reasonable doubt the guilt of, all those participants in this illegal conspiracy.  This includes the persons who supply and assist in the transportation of the narcotic controlled substances, and the distribution of proceeds from these illegal activities.

(Affidavit at ¶ 42).  "With this broad investigative backdrop, the affidavit sets the stage for

discussing what traditional methods of investigation have failed or will fail or would be too

dangerous." *Blackmon*, 273 F.3d at 1210.

### Informants

In *Blackmon*, the affidavit stated that

> despite the successful employment of four informants during the Miller pre-wiretap investigation, these informants are insufficient to meet the broad investigative purpose here because they "typically only possess limited knowledge concerning the scope of the criminal enterprise."  The affidavit

> further states that subjects like Blackmon "know that it is their best interest to reveal as little as possible to others concerning how their business is conducted ... Therefore, without the evidence sought by the application, cooperating source information is insufficient to identify the entire criminal enterprise."

*Blackmon*, 273 F.3d at 1210.  Similary, the affidavit in this case states essentially the same: "the cooperating witnesses are not privy to the identities and conversations of all the other co-conspirators comprising the distribution network of this organization" and even if "a cooperating witness gained access to the organization at Glover's level, they would not be able to learn information concerning the full scope of the organization . . . ."

(Affidavit at ¶ 47).

The Blackmon court found that "[t]hese statements would be true of most or all drug conspiracy investigations, and the limitations on the usefulness of informants, no matter how successful or potentially successful to the particular operation, would support the necessity of a wiretap."  *Blackmon*, 273 F.3d at 1210.

### Pen Registers

With respect to pen registers, the *Blacmon* court found that the wiretap application claimed that these "records only provide evidence that the telephone was used, without showing the identity of the callers or the nature or purpose of those communications." In this case, the affidavit claimed that "[a]lthough this information has been useful to capture relevant information, pen registers fail to provide detailed, real-time information which is needed to successfully further the objectives of the investigation."  (Affidavit at ¶ 55).  The Blackmon court found that "this is nothing more than a description of the inherent limitations of these devices. A full and complete statement of necessity must specify why, in the particular case at hand, these inherent limitations will be insufficient. As Blackmon argues, the record shows that pen registers did provide useful information in this case because they revealed numbers of

individuals in contact with Blackmon who had previously been identified during the Miller

wiretap."

### *Search Warrants and Grand Jury*

In *Blackmon*, the affidavit "justifies the lack of use of search warrants by stating

that they 'would be unlikely to produce evidence which would identify fully the other members

of the organization, the organizational structure, the scope of the narcotics trafficking conspiracy,

or the sources of supply.'  Witnesses were not used because 'interviews of witnesses [would] not

be successful in developing sufficient evidence to prosecute this entire organization.'  *Blackmon*,

273 F.3d at 1210.  Similarly, in this case, the Affidavit states "[t]he use of search warrants would

not be likely to reveal the total scope of the illegal operation and the identities of the co-

conspirators."  (Affidavit at ¶ 52).  Further, regarding grand jury investigation, it states that

"[c]alling witnesses before the Grand Jury, or otherwise interviewing them, would likely not

result in the gathering of sufficient evidence to uncover the full scope, nature, or identities of all

the participants in this criminal conspiracy." (Affidavit at ¶ 54).

According to *Blackmon*, "[t]hese boilerplate assertions are unsupported by

specific facts relevant to the particular circumstances of this case and would be true of most if

not all narcotics investigations. This is simply not enough." *Blackmon*, 273 F.3d at 1210 (citing

*United States v. Kalustian*, 529 F.2d 585, 588-89 (9th Cir. 1976)).

In conclusion, *Blackmon* said it best

> As stated above, the government must strictly adhere to the requirements of §
> 2518. That pen registers do not reveal the identity of callers; that drug dealers
> know it is in their best interest to reveal as little as possible; that witnesses cannot
> lead to the prosecution of an entire drug organization; and that traditional
> investigative methods do not reveal all are generic problems of police
> investigation. Their generic nature does not dissipate simply because the
> government claims a vast investigative purpose. Wiretaps themselves could little
> achieve the investigative goals stated in the government's application. The

> government may not cast its investigative net so far and so wide as to
> manufacture necessity in all circumstances. Doing so would render the
> requirements of § 2518 nullities.

*Blackmon*, 273 F.3d at 1211. "While the prior experience of investigative officers is indeed

relevant in determining whether other investigative procedures are unlikely to succeed if tried, a

purely conclusory affidavit unrelated to the instant case and not showing any factual relations to

the circumstances at hand would be ... inadequate compliance with the statute." *United States v.*

*Rice*, 478 F.3d 704, 710 (6th Cir. 2007) (suppressing wiretap) (citing  *United States v.*

*Landmesser,* 553 F.2d 17, 20 (6th Cir.), *cert. denied,* 434 U.S. 855 (1977)).  "If any of these

traditional investigative techniques has not been tried, the [G]overnment must explain why with

particularity."  [G]eneralities, or statements in the conclusory language of the statute, are

insufficient to support a wiretap application.  The statements must be factual in nature and they

must specifically relate to the individuals targeted by the wiretap." *United States v. Concepcion*,

2008 WL 2663028 (S.D.N.Y.) (July 1, 2008) (Scheindlin, J.) (suppressing wiretap) (citing

*United States v. Cline,* 349 F.3d 1276, 1280 (10th Cir. 2003) (quoting *United States v. VanMeter,*

278 F.3d 1156, 1163-64 (10th Cir. 2002)).

      In this case, the government explains why every type of investigative technique

either failed or was likely to fail.  Accepting the government's argument would mean that nearly

all drug distribution investigations would require a Title III wiretap. This is simply not the case.

Countless drug investigations are conducted without the benefit of a wiretap.  *See Concepcion*,

2008 WL 2663028 *6.

## **CONCLUSION**

      Glover submits that the government's affidavits offered in support of its

application for the interception of his wire communications, purporting to show that "normal

investigative procedures have been tried and have failed," was inadequate and did not meet the

requirements of the statute.  The explanations of why normal investigative procedures and

alternatives were not available were conclusory; and, to the contrary, showed that normal

investigatory methods were not even attempted as to Glover.  Accordingly, the government's

applications did not contain sufficient facts to satisfy 18 U.S.C. § 2518 (1)(c) and support the

issuing court's § 2518(3)(c) findings.  Additionally, Glover submits that Agent Pardee

intentionally misled Judge Collyer and displayed a reckless regard for the truth by exaggerating

certain facts and noting others out of context to enhance the allegations, which were essential to

a finding of probable cause.

Based on the foregoing, Defendant Glover respectfully requests this Honorable

Court to enter an Order suppressing from use at trial all evidence that was obtained directly or

indirectly as a result of the unlawful interceptions.

Dated: Washington, DC
          September 11, 2008                          Respectfully submitted,

                                                      **LAW OFFICE OF A. EDUARDO BALAREZO**


                                                             /s/
                                                      By: _____
                                                             A. Eduardo Balarezo (Bar # 462659)
                                                             400 Fifth Street, NW; Suite 300
                                                             Washington, DC  20001
                                                             (202) 639-0999

                                                             *Counsel for Lonnell Glover*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 16th day of June 2008, I caused a true and correct copy of the foregoing Defendant Glover' Reply to the Government's Response to Defendants' Several Motions to Suppress the Results of Court Ordered Electronic Surveillance to be delivered to the parties in this matter via Electronic Case Filing (ECF).

/s/

_____

A. Eduardo Balarezo